***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner; the appealing party has shown no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
Plaintiff has requested that the additional evidence be considered while this matter is pending before the Full Commission. Having determined that the evidence is not new and could have been offered at the hearing before the deputy commissioner, the Full Commission hereby denies plaintiff's request to consider the additional evidence.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. ESIS Insurance Company was the carrier on the risk at all times relevant herein.
4. The parties stipulated that plaintiff contracted an occupational disease as previously determined in this matter and the Industrial Commission approved a Form 21 Agreement.
5. The parties stipulated that defendants paid temporary total disability benefits to claimant pursuant to the Form 21 Agreement through and including November 17, 1997.
6. The parties stipulated to plaintiff's medical records from Fayetteville Orthopedic Clinic, Cape Fear Orthopedic Clinic, P.A., ProActive Therapy, Southern Regional Area Health Education Center, Cape Fear Cardiology, Lucas Van Tran, neurologist, Med One Occupational Health Care, Dr. Glen Subin, UNC Hospitals, Raleigh Hand Clinic, Layette Clinic, Richard Keith, Ph.D, Cape Fear Pain Management, Dr. Eddie Powell, and Dr. James E. Lowe.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the evidentiary hearing, plaintiff-employee was a 47 year old high school graduate.
2. Plaintiff-employee was employed by defendant-employer as a production technician. While working for defendant-employer, plaintiff-employee began to develop problems with her wrists and was out of work and paid temporary partial disability from September 12, 1997 through the authorized suspension pursuant to the Commission's order on defendant's Form 24 request to suspend benefits.
3. Plaintiff-employee originally sought medical treatment from Dr. James Whetter, her family doctor, on September 20, 1995. Nerve conduction studies were performed on October 13, 1995, and Dr. Whetter diagnosed plaintiff-employee with bilateral carpal tunnel syndrome. Dr. Whetter prescribed physical therapy but plaintiff-employee reported no improvement following the physical therapy.
4. On December 5, 1995, plaintiff-employee sought medical treatment from Dr. Louis Clark, Jr., an orthopedic surgeon. Dr. Clark performed surgery on plaintiff-employee's right hand/wrist to release the median nerve at the carpal tunnel on February 16, 1996. After surgery, plaintiff-employee underwent a course of physical therapy and reported to Dr. Clark that her condition had not improved. In his note of April 2, 1996, Dr. Clark stated that the physical therapist had recorded that plaintiff-employee's objective findings did not support her subjective complaints.
5. Plaintiff-employee presented for an independent medical evaluation by Dr. Glenn Subin on August 29, 1996. Dr. Subin noted that there was no physiological explanation for plaintiff-employee's grip strength. Dr. Subin further wrote that he could not explain why plaintiff-employee had failed to improve following adequate surgical intervention. Dr. Subin opined that plaintiff-employee had reached maximum medical improvement, but retained a 10% permanent partial impairment to her right hand.
6. Although the records of Dr. Johnson are not included in the workers' compensation file, his notes are referred to in the notes of Dr. Whetter of December 1996 and January 1997 and Dr. Melton in February 1997. Plaintiff-employee sought medical treatment from Dr. Johnson for her right knee and he performed arthroscopic surgery in October 1996. Following the surgery, plaintiff-employee returned to Dr. Whetter, and reported pain in her right knee and left hip. Plaintiff-employee did not report pain in her wrist. Dr. Whetter referred plaintiff-employee to Dr. Melton.
7. Plaintiff-employee presented to Dr. Melton on February 3, 1997. Plaintiff-employee reported long-standing right knee pain and complained of left hip pain. Although plaintiff-employee's joints appeared normal to Dr. Melton, plaintiff-employee reported widespread and diffuse pain. Dr. Melton diagnosed plaintiff-employee with fibromyalgia. Dr. Melton opined that plaintiff-employee was disabled as a result of the fibromyalgia and that her condition did not change between February 1997 and July 2000. Dr. Melton did not treat plaintiff-employee for carpal tunnel syndrome.
8. On March 24, 1997, plaintiff-employee presented to Dr. Damon Anagnos, plastic and hand surgeon. Plaintiff-employee reported problems with her wrists, but did not report the widespread complaints which she had reported to Dr. Melton one month earlier. In his notes from the first examination, Dr. Anagnos noted that plaintiff-employee's symptoms were out of proportion to his physical findings and that he could find no objective reason to keep plaintiff-employee out of work. Dr. Anagnos allowed plaintiff-employee to return to work with the restriction of not lifting more than 25 pounds, wearing splints to work, and no exposure to hot or sharp objects. Dr. Anagnos' note releasing plaintiff-employee to return to work was changed by marking out 25 pounds and writing five to ten pounds over the note. Dr. Anagnos was not aware of who made this change.
9. Plaintiff-employee continued to complain of left-sided wrist problems, and Dr. Anagnos performed a left carpal tunnel release on May 2, 1997. Following the surgery, plaintiff-employee underwent an additional course of physical therapy.
10. Following the left carpal tunnel surgery, plaintiff-employee underwent medical treatment with Dr. Rhonda Lowry for asthma and Dr. Melton for fibromyalgia.
11. On September 23, 1997, plaintiff-employee underwent an independent medical evaluation with Dr. Jon Kolkin, an orthopedic surgeon with a specialty in treatment of the hands. Dr. Kolkin could not explain plaintiff's complaints on an anatomical basis, and he recommended no further medical treatment.
12. In October 1997, defendant-employer had three jobs available. Pete Hocamp, the rehabilitation specialist assigned to the case, observed each of the jobs with defendant-employer and prepared a written job description. The written job description was provided to Dr. Anagnos and Dr. Kolkin, and two of the jobs were approved by both physicians as falling within plaintiff-employee's restrictions.
13. On October 31, 1997, defendant-employer offered these two positions to plaintiff-employee by certified mail, which was sent by Mr. Hocamp. The mail was received by plaintiff-employee on November 4, 1997 and she was to return to work on November 10, 1997. Plaintiff-employee did not return to work and her employment with defendant-employer was terminated on December 15, 1997. Plaintiff was notified that her position was terminated in a letter dated December 15, 1997 from defendant-employer, but plaintiff did not respond to the letter or otherwise indicate that she was willing to accept the offered employment.
14. After plaintiff-employee's termination, defendant-employer filed an application to stop payment with the Industrial Commission and the application was approved by the Industrial Commission on March 24, 1998. After compensation was terminated, plaintiff-employee's attorney wrote to defendant-employer stating that plaintiff-employee would "attempt" to return to work at the jobs which had been offered to her. Other than this correspondence to defendant-employer, plaintiff-employee has made no attempt to return to work, and she has reported to her doctors that she is unable to work. Plaintiff did not report to work with defendant-employer, nor did she take other action toward employment. Plaintiff asked the Commission to reconsider its Form 24 suspension of benefits because defendant-employer no longer had a position for her, but this relief was denied by the Executive Secretary on July 20, 1998.
15. On November 12, 1998, plaintiff-employee sought medical treatment by the Rev. Eddie Powell, M.D. Dr. Powell ordered nerve conduction studies which were performed on November 18, 1999. The results of these nerve conduction studies were within normal limits. Dr. Powell ordered an MRI of the cervical spine and the results of the MRI were also within normal limits. Nerve conduction studies were repeated on December 2, 1999, and the results were also within normal limits. Dr. Powell ordered an MRI of the brain and the results of this examination were also within normal limits.
16. Dr. Powell referred plaintiff-employee to Dr. James Lowe, a plastic surgeon with a hand specialty. Dr. Lowe performed bilateral carpal tunnel surgery on January 19, 2000. As with her previous surgeries, plaintiff-employee reported that she had no improvement following the surgery and that her condition became worse after surgery. The Full Commission gives little weight to Dr. Lowe's opinion because his findings and conclusions are not supported by the other health care providers and because plaintiff did not respond favorably to his treatment.
17. Plaintiff-employee returned to Dr. Kolkin on July 18, 2000, for a follow-up evaluation. The results of Dr. Kolkin's examination were the same as they had been in September 1997. Dr. Kolkin could find no anatomic explanation for plaintiff-employee's complaints of wrist pain, and plaintiff-employee did not complain of fibromyalgia and diffuse pain to Dr. Kolkin.
18. In January 2000, Pete Hocamp was re-assigned to plaintiff-employee's case to perform a labor market survey. At this time, and since October 1997, there have been jobs available within plaintiff-employee's restrictions.
19. In November 1997, plaintiff-employee unjustifiably refused to accept a job within her physical restrictions with defendant-employer. Since that time there have been jobs available within plaintiff-employee's physical restrictions and plaintiff-employee could have obtained employment if she had made a reasonable effort under the circumstances. The Full Commission does not accept as credible plaintiff's assertion that she was willing to return to work for defendant-employer in April 1998, because plaintiff was continuing to complain of pain to her physicians and she did not believe that she could work at that time or at other relevant time periods. The greater weight of the evidence is that plaintiff has not desired to return to work, that suitable work was timely and appropriately offered by defendant-employer, that this employment was not seasonably accepted by plaintiff, and that plaintiff has not taken other reasonable efforts to find suitable work within her restrictions.
20. The competent evidence in the record establishes that plaintiff-employee unjustifiably refused employment within her restrictions with defendant-employer and has not taken reasonable efforts to find other suitable employment. Plaintiff was released to return to work from her compensable bilateral carpal tunnel syndrome in October 1997 and she was offered employment, approved by her physicians, which she declined by not reporting to work. Further, nerve conduction studies performed in November 1999 and December 1999 were normal and, thereby, failed to establish lingering disability from plaintiff's compensable bilateral carpal tunnel syndrome.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. On November 10, 1997, by not reporting to work with defendant-employer, plaintiff unjustifiably refused employment within her restrictions and therefore, she is not entitled to further compensation. N.C. GEN. STAT. § 97-32.
2. Since November 10, 1997, plaintiff's carpal tunnel syndrome has not caused her to be disabled; therefore, she is not entitled to further compensation. N.C. GEN. STAT. § 97-2(9).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiff's claim is hereby and under the law must be DENIED.
2. Each side must pay its own costs, except defendants shall pay expert witness fees in the amount of $200.00 to Dr. Anagnos, $235.00 to Dr. Kolkin and $90.00 to Mr. Pete Hocamp.
 S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________________________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
S/_____________________________ THOMAS J. BOLCH COMMISSIONER